IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICA'S BREWING COMPANY, | ) | Case No. 11-5656 |
| | ) | |
| Debtor. | ) | Honorable A. Benjamin Goldgar |

## NOTICE OF MOTION

To:   Attached Service List

PLEASE BE ADVISED that on February 23, 2011 at 9:30 a.m., we shall appear before the Honorable A. Benjamin Goldgar in courtroom 613 of the courthouse located at 219 South Dearborn Street, Chicago, Illinois, and then and there present the *Debtor's Motion Pursuant to Section 366 of the Bankruptcy Code for the Entry of an Order: (I) Prohibiting Utilities from Altering, Refusing or Discontinuing Services to, or Discriminating Against, the Debtor on Account of Prepetition Amounts Due; (II) Determining That Utilities Are Adequately Assured of Future Payment; (III) Establishing Procedures for Determining Requests for Additional Assurance; and (IV) Granting Certain Related Relief.* A copy of the motion has been filed with the Court, served upon the United States Trustee and the attached service list, and is available upon written request to the undersigned.

Dated: February 19, 2011                    /s/ Paul M. Bauch

Paul M. Bauch (ARDC # 6196619)
Kenneth A. Michaels Jr. (ARDC # 6185885)
Carolina Y. Sales (ARDC # 6287277)
Luke J. Hinkle (ARDC # 6294323)
BAUCH & MICHAELS, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709

IN THE UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF ILLINOIS - EASTERN DIVISION

| | | |
|---|---|---|
| In re: | ) | Chapter 11 |
| | ) | |
| AMERICA'S BREWING COMPANY, | ) | Case No. 11-5656 |
| | ) | |
| Debtor. | ) | Honorable A. Benjamin Goldgar |

**DEBTOR'S MOTION PURSUANT TO SECTION 366 OF THE
BANKRUPTCY CODE FOR THE ENTRY OF AN ORDER: (I) PROHIBITING
UTILITIES FROM ALTERING, REFUSING OR DISCONTINUING
SERVICES TO, OR DISCRIMINATING AGAINST, THE DEBTOR ON
ACCOUNT OF PREPETITION AMOUNTS DUE; (II) DETERMINING
THAT UTILITIES ARE ADEQUATELY ASSURED OF FUTURE
PAYMENT; (III) ESTABLISHING PROCEDURES FOR DETERMINING
REQUESTS FOR ADDITIONAL ASSURANCE;
AND (IV) GRANTING CERTAIN RELATED RELIEF**

America's Brewing Company, debtor and debtor in possession ("America's Brewing" or "Debtor"), pursuant to Section 366 of title 11 of the United States Code (11 U.S.C. §§ 101 *et. seq*., as amended, the "Bankruptcy Code"), hereby moves (the "Motion") this Court for entry of interim and final orders in the forms attached hereto as proposed orders: (i) prohibiting utilities from altering, refusing or discontinuing services to, or discriminating against, the Debtor on account of prepetition amounts due; (ii) determining that the utilities are adequately assured of future payment; (iii) establishing procedures for determining requests for additional assurance of future payment; and (iv) granting certain related relief. In further support of this Motion, the Debtor respectfully states as follows:

## I. JURISDICTION

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ l334 and 157. Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

2.    This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(A) and (O).

## II. <u>BACKGROUND</u>

3.    On February 14, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief under Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"), in the United States Bankruptcy Court for the Northern District of Illinois (the "Court"). The Debtor is operating its business and managing its property as debtor in possession pursuant to Sections 1107(a) and 1108 of the Bankruptcy Code.

4.    No trustee or examiner has been appointed, and no official committee of creditors has yet been established.

5.    The Debtor owns and operates an upscale, fine dining restaurant and banquet facility in Aurora, Illinois. The Debtor is a party to several executory contracts with various venders that provide services vital to the restaurant's operations and maintenance. The Debtor is also under contract to provide banquet and catering services to a number of customers with upcoming events at the restaurant. The Debtor employs approximately 124 employees.

6.    The Debtor leases its restaurant facility located in Aurora, Illinois, from First Round, Fourth Pick, Limited Partnership ("First Round"), a related third party, on a triple net basis. First Round has also filed for bankruptcy relief and is seeking to have its case jointly administered with the instant bankruptcy proceeding.

7.    The Debtor suffered financial difficulties associated with the depressed economy in general and particularly the depressed market for upscale dining and banquet services. The Debtor is a party to a financing agreement with and among

the City of Aurora, as Lender, Debtor as Borrower, and Scott Ascher and Pamela Ascher as guarantors.

8.    The Debtor is also a party to a financing agreement dated as of December 22, 2005, with and among the Ciena Capital Funding, LLC f/k/a BLX Capital, LLC ("Ciena Capital"), as Lender, the Debtor as Borrower, and Scott Ascher and Pamela Ascher as guarantors.

9.    Prior to the commencement of this case, Ciena Capital filed an action in the Circuit Court of Kane County, Illinois seeking to collect from the Debtor on the Note, foreclose its mortgage lien on the restaurant (granted by First Round), collect against the guarantors, Scott and Pamela Ascher, replevy the Debtor's personal property, and otherwise enforce its security interest in the Debtor's assets. As of the Petition Date, Ciena Capital's claim is estimated at approximately $3.7 million.

## III. **RELIEF REQUESTED**

10.    Pursuant to Section 366(a) of the Bankruptcy Code, the Debtor seeks entry of an interim order ("Interim Order") (a) prohibiting those utility companies (collectively, the "Utility Companies" and each, individually, a "Utility Company") currently providing services, or that will provide services, to the Debtor from altering, refusing or discontinuing services to, or discriminating against, the Debtor on account of prepetition amounts due, pending entry of a final order granting the relief sought herein (the "Final Order"); (b) determining that the Utility Companies have received adequate assurance of payment for post-petition utility service; (c) establishing certain procedures for determining requests for additional assurance;

(d) permitting Utility Companies to opt out of the procedures established herein; and (e) scheduling a final hearing on the Motion (the "Final Hearing") within 30 days of the Petition Date. The Debtor will seek entry of the Final Order granting the relief requested herein on a permanent basis at the Final Hearing.

11.    The Debtor currently uses electricity, natural gas, waste removal, telephone and other similar services provided by the utility companies (the "Utility Companies") on the list attached hereto as Exhibit A (the "Utilities Service List"). In addition, the Debtor is requesting that this Motion apply to all of the Debtor's utility companies, whether or not any given utility company is included on the Utilities Service List. The Debtor has proposed a procedure for supplementing the Utilities Service List.

12.    Uninterrupted utility service is essential to the Debtor's ongoing restaurant and banquet operations. The Debtor could not operate its business in the absence of continuous utility service. Should any Utility Company refuse or discontinue service, even for a brief period of time, the Debtor will be forced to cease its operations, resulting in a substantial disruption of its business and loss of revenue. The temporary or permanent discontinuation of utility services would irreparably harm the Debtor.

13.    The Debtor intends to pay its postpetition obligations to the Utility Companies on a timely basis. The Debtor will make these payments from cash generated through its continued operations.

14.    Pursuant to Section 366(c)(2) of the Bankruptcy Code, a utility may alter, refuse or discontinue a chapter 11 debtor's utility service if the utility does not

4

receive from the debtor or the trustee adequate assurance of payment within 30 days of the commencement of the debtor's chapter 11 case. Section 366(c)(1)(A) of the Bankruptcy Code defines the phrase "assurance of payment" to mean, among other things, a cash deposit. Accordingly, the Debtor proposes to provide a deposit to any requesting Utility Company in an amount equal to (i) 100 percent of the prepetition amounts due if such prepetition amounts due are $2,000 or less, or (ii) if the prepetition amounts due are greater than $2,000, then the Debtor's calculation of the cost of two (2) weeks' worth of service, based on the historical average over the twelve (12) month period ending before the Petition Date. A request for, and acceptance of, an Adequate Assurance Deposit shall be deemed an acknowledgement and admission by the Utility Company that the Adequate Assurance Deposit is the form of adequate assurance that is satisfactory to it, within the meaning of section 366 of the Bankruptcy Code.

15.    Likewise, any Utility Company that does not timely request an Adequate Assurance Deposit within 30 days after the Petition Date (the "Request Deadline") and does not file an Objection (as defined herein) and/or timely request to opt out of the Adequate Assurance Procedures (as defined herein) shall be deemed to have adequate assurance that is satisfactory to it, within the meaning of Section 366 of the Bankruptcy Code.

16.    The Debtor submits that the availability of the Adequate Assurance Deposit (if timely requested), in conjunction with the Debtor's demonstrated ability to pay for future utility service in the ordinary course of business (collectively, the "Proposed Adequate Assurance"), constitutes sufficient adequate assurance of

future payment to the Utility Companies to satisfy the requirements of Section 366 of the Bankruptcy Code. Nonetheless, if any Utility Company believes additional assurance is required, it may request such assurance pursuant to the procedures described below.

### IV. **THE PROPOSED ADEQUATE ASSURANCE PROCEDURES**

17.     To address the right of any Utility Company under Section 366(c)(2) of the Bankruptcy Code to seek adequate assurance satisfactory to it, the Debtor proposes that the following procedures (the "Adequate Assurance Procedures") be adopted:

a.  Any Utility Company desiring assurance of future payment for utility services beyond the Proposed Adequate Assurance must serve a request (an "Additional Assurance Request") so that it is received by the Debtor's counsel by the Request Deadline at Bauch & Michaels, LLC, 53 W. Jackson Blvd., Suite 1115, Chicago, IL 60604, Attn: Paul M. Bauch.

b.  Any Additional Assurance Request must: (i) be made in writing; (ii) set forth the location(s) for which utility services are provided and relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the requesting Utility Company; (iv) explain why the requesting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and (v) set forth the form and amount (if applicable) of additional adequate assurance requested.

c.  Upon the Debtor's receipt of an Additional Assurance Request at the addresses set forth above, the Debtor shall have the greater of (i) 14 days

from the receipt of such Additional Assurance Request; or (ii) 30 days from the Petition Date (collectively, the "Resolution Period") to negotiate with the requesting Utility Company to resolve its Additional Assurance Request. The Resolution Period may be extended by agreement of the Debtor and the applicable Utility Company.

d. The Debtor, in its discretion, may resolve any Additional Assurance Request by mutual agreement with the requesting Utility Company and without further order of the Court, and may, in connection with any such resolution, in its discretion, provide the requesting Utility Company with additional adequate assurance of future payment in a form satisfactory to the Utility Company, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtor believes such additional assurance is reasonable.

e. If the Debtor determines that an Additional Assurance Request is not reasonable, and it is not able to resolve such request during the Resolution Period, the Debtor, during or immediately after the Resolution Period (as the same may be extended by agreement of the Debtor and the Utility Company in question), will request a hearing before this Court to determine the adequacy of assurances of payment made to the requesting Utility Company (the "Determination Hearing"), pursuant to Section 366(c)(3)(A) of the Bankruptcy Code.

f. Pending the resolution of the Additional Assurance Request at a Determination Hearing, the Utility Company making such request shall be

restrained from discontinuing, altering or refusing service to the Debtor on account of unpaid charges for prepetition services or on account of any objections to the Proposed Adequate Assurance.

g.    Other than through the Opt-Out Procedures (as defined herein), any Utility Company that does not comply with the Adequate Assurance Procedures set forth herein is deemed to have adequate assurance that is satisfactory to it, within the meaning of Section 366 of the Bankruptcy Code, and is forbidden from discontinuing, altering or refusing service on account of any unpaid prepetition charges, or requiring additional assurance of payment (other than the Proposed Adequate Assurance).  The Interim Order shall be deemed the Final Order with respect to all Utility Companies that do not timely file and serve an Objection (as defined herein).

## V. **THE PROPOSED OPT-OUT PROCEDURES**

18.    As noted above, Section 366(c) of the Bankruptcy Code requires the Debtor to provide utility companies, within 30 days of the Petition Date, with "adequate assurance of payment for utility service that is satisfactory to the utility." 11 U.S.C. § 366(c)(2). Thereafter, any such adequate assurance provided by the Debtor may be modified by the Court after notice and a hearing under Section 366(c)(3)(A) of the Bankruptcy Code. Under the Adequate Assurance Procedures, however, the Debtor may seek a determination of appropriate adequate assurance at a Determination Hearing held after the first 30 days of this case, without providing interim assurances deemed "satisfactory" to the Utility Company. Although the Adequate Assurance Procedures are reasonable, certain Utility

Companies might assert that the procedures as implemented are not strictly in compliance with Section 366 of the Bankruptcy Code if an adequate assurance dispute is not resolved within the 30 days following the Petition Date. If, as a result, any Utility Company wishes to opt out of the Adequate Assurance Procedures, the Debtor submits that the Court should schedule a hearing and issue a ruling on the amount of adequate assurance to be provided to such Utility Companies within 30 days of the Petition Date.

19.   To avoid any argument that the Debtor has not fully complied with Section 366 of the Bankruptcy Code, the Debtor proposes the following procedures (the "Opt-Out Procedures"):

a. A Utility Company that desires to opt-out of the Adequate Assurance Procedures must file an objection (the "Objection") with the Bankruptcy Court and serve such Objection so that it is actually received within 15 days of entry of the Interim Order by the Debtor's counsel at Bauch & Michaels, LLC, 53 W. Jackson Blvd., Suite 1115, Chicago, IL 60604, Attn: Paul M. Bauch.

b. Any Objection must: (i) be made in writing; (ii) set forth the location(s) for which utility services are provided to the Debtor and the relevant account number(s); (iii) describe any deposits, prepayments or other security currently held by the objecting Utility Company; (iv) explain why the objecting Utility Company believes the Proposed Adequate Assurance is not sufficient adequate assurance of future payment; and

(v) identify, and explain the basis of, the proposed adequate assurance requirement under Section 366(c)(2) of the Bankruptcy Code.

c.  The Debtor, in its discretion, may resolve any Objection by mutual agreement with the objecting Utility Company and without further order of the Court, and may, in connection with any such resolution, in its discretion, provide such objecting Utility Company with additional assurance of future payment, including, but not limited to, cash deposits, prepayments and/or other forms of security, if the Debtor believes such additional assurance is reasonable. In the event that the Debtor and any objecting Utility Company, pursuant to this paragraph, consensually resolve an Objection to the Adequate Assurance Procedures, such Utility Company shall withdraw its Objection prior to any hearing date set by the Court.

d.  If the Debtor determines that an Objection is not reasonable and/or the Debtor is not otherwise able to consensually resolve an Objection with a Utility Company, then such Objection will be heard at the Final Hearing.

e.  Any Utility Company that does not timely file an Objection as set forth above is deemed to consent to, and shall be bound by, the Adequate Assurance Procedures.

20.    To resolve any Objections within 30 days of the Petition Date, the Debtor requests that the Court schedule the Final Hearing on any unresolved Objections approximately 25 days after the Petition Date.

21.     It is possible that, despite the Debtor's best efforts, certain Utility Companies have not yet been identified by the Debtor or included on the Service List. To the extent that the Debtor identifies additional Utility Companies, the Debtor will serve copies of the Interim Order and Final Order on such newly-identified Utility Companies. The Debtor requests that the Interim Order and Final Order be binding on all Utility Companies, subject to their rights to the Proposed Adequate Assurance and to request additional adequate assurance.

## VI. __ARGUMENT__

22.     Section 366 of the Bankruptcy Code states, in relevant part, as follows:

> (a) Except as provided in subsections (b) and (c) of this section, a utility may not alter, refuse, or discontinue service to, or discriminate against, the trustee or the debtor solely on the basis of the commencement of a case under this title or that a debt owed by the debtor to such utility for service rendered before the order for entry of relief was not paid when due. [. . .]

> (c)(2) Subject to paragraphs (3) and (4), with respect to a case filed under chapter 11, a utility referred to in subsection (a) may alter, refuse, or discontinue utility service, if during the 30-day period beginning on the date of the filing of the petition, the utility does not receive from the debtor or the trustee adequate assurance of payment for utility service that is satisfactory to the utility.

11 U.S.C. § 366.

23.     The policy underlying Section 366 of the Bankruptcy Code is to protect debtors from utility service cutoffs upon the filing of a bankruptcy case, while at the same time providing utility companies with adequate "assurance of payment" for postpetition utility service. *See* H.R. Rep. No. 95-595, at 350 (1978), *reprinted* in 1978 U.S.C.C.A.N. 5963, 6306. Section 366(c)(1) of the Bankruptcy Code, as recently

modified in October 2005, defines "assurance of payment" to mean several enumerated forms of security (*e.g.*, cash deposits, letters of credit, prepayment for utility service) while excluding from the definition certain other forms of security (*e.g.*, administrative expense priority for a utility's claim). In addition, Section 366(c)(3)(B) of the Bankruptcy Code provides that a court may not consider certain facts (*e.g.*, a debtor's prepetition history of making timely payments to a utility) in making a determination of adequate assurance of payment.

24. Section 366(c) of the Bankruptcy Code not only fails to establish a minimum amount of adequate "assurance of payment," but explicitly empowers the court to determine the appropriate level of adequate assurance required in each case. *See* 11 U.S.C. § 366(c)(3)(A) ("On request of a party in interest and after notice and a hearing, the Court may order modification of an assurance of payment.").

25. Thus, there is nothing within Section 366 of the Bankruptcy Code that prevents a court from ruling that, on the facts of the case before it, the amount required to adequately assure future payment to a utility company is nominal, or even zero. Prior to the enactment of Section 366(c) of the Bankruptcy Code, courts enjoyed precisely the same discretion to make such rulings pursuant to Section 366(b) of the Bankruptcy Code, and frequently did so. *See Virginia Elec. & Power Co. v. Caldor, Inc. – N.Y.*, 117 F.3d 646, 650 (2d Cir. 1997) ("Even assuming that 'other security' should be interpreted narrowly, we agree with the appellees that a bankruptcy court's authority to 'modify' the level of the 'deposit or other security,' provided for under § 366(b), includes the power to require no 'deposit or other

security' where none is necessary to provide a utility supplier with "adequate assurance of payment.").

26.    Moreover, Congress has not changed the requirement that the assurance of payment only be "adequate." Courts construing Section 366(b) of the Bankruptcy Code have long recognized that adequate assurance of payment does not constitute an absolute guarantee of the debtor's ability to pay. *See In re Penn Jersey Corp.*, 72 B.R. 981, 982 (Bankr. E.D. Pa. 1987) (stating that Section 366(b) of Bankruptcy Code "contemplates that a utility receive only such assurance of payment as is sufficient to protect its interests given the facts of the debtor's financial circumstances"), *abrogated on other grounds by In re Lease-a-Fleet, Inc.*, 131 B.R. 945, 950 n.1 (Bankr. E.D. Pa. 1991); *accord In re Caldor, Inc.-N.Y.*, 199 B.R. 1, 3 (S.D.N.Y. 1996) ("Section 366(b) requires [a] [b]ankruptcy [c]ourt to determine whether the circumstances are sufficient to provide a utility with 'adequate assurance' of payment. Courts have recognized that "[i]n deciding what constitutes 'adequate assurance' in a given case, a bankruptcy court must 'focus upon the need of the utility for assurance, and to require that the debtor supply no more than that, since the debtor almost perforce has a conflicting need to conserve scarce financial resources.'" *Caldor*, 117 F.3d at 650 (emphasis in original) (quoting *Penn Jersey*, 72 B.R. at 985). The statute does not require an 'absolute guarantee of payment.") (citation omitted), *aff'd sub nom. Virginia Elec. & Power Co. v. Caldor, Inc.-N.Y.*, 117 F.3d 646 (2d Cir. 1997); *In re Adelphia Bus. Solutions, Inc.*, 280 B.R. 63, 80 (Bankr. S.D.N.Y. 2002) (same); *Steinbach v. Tucson Elec. Power Co. (In re Steinebach)*, 303 B.R. 634, 641 (Bankr. D. Ariz. 2004) ("Adequate assurance of

payment is not, however, absolute assurance…. all § 366(b) requires is that a utility be protected from an unreasonable risk of non-payment"). Therefore, despite its language allowing a utility to take adverse action against the debtor should the debtor fail to provide adequate assurance of future payment "satisfactory to the utility," Section 366 of the Bankruptcy Code does not require that the assurance provided be "satisfactory" once a party seeks to have the Court determine the appropriate amount of adequate assurances.

27.    The Debtor submits that, given the foregoing, entry of the Interim Order is consistent with, and fully satisfies, the requirements of Section 366 of the Bankruptcy Code. Far from offering the Utility Companies nominal (or even no) additional assurance of payment, the Debtor seeks authority to provide the Utility Companies, upon request, with significant prepayments for services and procedures pursuant to which the Utility Companies can seek greater or different security. When complemented by the Debtor's ability to pay through access to cash from continued operations, such assurance of payment significantly alleviates – if not eliminates – any honest concern of nonpayment on the part of the Utility Companies, and is thus clearly "adequate."

28.    Relief similar to the relief requested herein has been granted by this and other courts in other chapter 11 cases. *See, e.g.*, *In re Enesco Group, Inc.*, Case No. 07-0565 (ABG) (Bankr. N.D. Ill. Feb. 7, 2007); *In re Werner Holding Co. (DE), Inc.*, Case No. 06-10578 (Carey, K.) (Bankr. D. Del. 2006); *In re Pliant Corporation*, Case No. 06-10001 (Walrath, M.) (Bankr. D. Del. 2006); *In re J.L. French Automotive Castings, Inc.*, Case No. 06-10119 (Walrath, M.) (Bankr. D. Del. 2006).

WHEREFORE, the Debtor requests that this Court enter the Interim Order and set a Final Hearing to grant the relief requested herein on a permanent pursuant to the Final Order, and for such further and other relief as may be appropriate.

Dated: February 19, 2011

Respectfully submitted,

AMERICA'S BREWING COMPANY

By:    /s/ Paul M. Bauch
          One of Its Attorneys

Paul M. Bauch (ARDC # 6196619)
Kenneth A. Michaels Jr. (ARDC # 6185885)
Carolina Y. Sales (ARDC # 6287277)
Luke J. Hinkle (ARDC # 6294323)
Bauch & Michaels, LLC
53 W. Jackson Boulevard, Suite 1115
Chicago, Illinois 60604
Tel: (312) 588-5000
Fax: (312) 427-5709